**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MARJORIE STEVENSON, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV00326 |
| vs. | : | |
| | | District Judge Walter H. Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

In April 2002, Plaintiff Marjorie Stevenson underwent brain surgery, specifically a craniotomy for removal of a tumor.  (Tr. 155-56, 301).  Less than two week later she developed a blood clot (thrombosis or an arterial embolism) in her left upper arm, and she again underwent surgery.  (Tr. 164-76).

The following year Plaintiff sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB).  (Tr. 60).  She claimed a disability onset date of October 1, 2002.  *Id*.

After initial administrative denials of her DIB application, Administrative Law

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Judge (ALJ) James I.K. Knapp held two hearings. Plaintiff testified during each hearing. (Tr. 328-61, 371-81). ALJ Knapp issued a written decision concluding that Plaintiff was not under a "disability" within the meaning of the Social Security Act. (Tr. 14-28). The ALJ's non-disability determination and resulting denial of Plaintiff's DIB application became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #5), the Commissioner's Memorandum in Opposition (Doc. #6), Plaintiff's Reply Brief (Doc. #7), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision and a remand of this matter to the Social Security Administration for payment of DIB. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    FACTUAL BACKGROUND

### A.    <u>Plaintiff and Her Testimony</u>

On the date of the ALJ's decision, Plaintiff's age placed her in the category of a person "closely approaching advanced age" for purposes of resolving her DIB application. *See* 20 C.F.R. §1563(d); *see also* Doc. #5 at 1. She has a high school education (Tr. 27) and has worked over the years in a factory, as a waitress, and as an apartment manager. (Tr. 89).

Plaintiff met the insured-status requirements for purposes of DIB eligibility

beginning on October 1, 2002 (her claimed disability onset date) through June 2005. *See* Tr. 26; *see also* Doc. #5 at 1. Her DIB application therefore presented the Social Security Administration with the issue of whether she was under a disability from October 1, 2002 through June 30, 2005.

Plaintiff testified during the ALJ's hearing that after her brain surgery in April 2002, she had memory and concentration problems, and headaches once or twice a month. (Tr. 331-33, 345-47). After her left arm arterial surgery, she continued to have blockage problems in her left arm as well as constant left shoulder and hand numbness and constant left shoulder pain extending down her arm into her left elbow and extending into her chest. (Tr. 333-34, 340-41, 344, 348-49). She experiences increased pain and numbness when she lifts her left arm above the level of her head. (Tr. 348). She cannot receive injections in her left arm and cannot be tested with a blood-pressure cuff on her left arm due to the risk that another thrombosis will develop. (Tr. 347-48). Plaintiff is left-hand dominant and had problems writing and dropping items. She also experiences right foot pain and numbness due to plantar fasciitis. (Tr. 334-35, 349-51). She further testified, "My foot has given a way from me ever since I've had the brain tumor trouble." (Tr. 350).

Plaintiff testified that she could walk for 10-to-15 minutes at a time; stand for 15-to-20 minutes at a time; and lift 5 pounds with her right hand. (Tr. 339-40). She did not have difficulty sitting. (Tr. 339). She also suffered from depression and anxiety and had crying spells. (Tr. 335-36, 352-53).

Plaintiff visits her friends about once a week, but she limits her driving because she sometimes forgets where she is going.  (Tr. 344-45, 357, 377).  Her memory problems are continuously getting worse.  (Tr. 346).  She dusts once a week; brushes her dog about every other day; cooks microwave-type meals; waters flowers once a week using a small cup of water; watches television daily with some concentration difficulties; reads the newspaper for about 15 minutes before her mind wanders; and does household chores, does laundry, attends church, and pulls weeds.  (Tr. 330, 332, 337-38, 345-46, 354-56).

During the second administrative hearing, Plaintiff testified that her left arm and shoulder pain was a 7 out of 10 in the summer and 10 out of 10 in winter (on a 0-to-ten scale, 0 being no pain).  (Tr. 374).  Her medication, Plavix and Cardizem, makes her dizzy.  *Id*.  She can stand and walk for about thirty minutes at a time and sit for fifteen minutes at a time.  (Tr. 376, 378).  She is unable to sit for long periods of time because her legs start hurting with the right leg hurting more than the left leg.  (Tr. 376).

### B.    <u>Medical Source Opinions</u>

Plaintiff relies on the opinions of Dr. Vosler, her treating physician.  Dr. Vosler completed a questionnaire in August 2005 noting that Plaintiff's prognosis was "poor." (Tr. 306).  He listed Plaintiff's symptoms as headaches, forgetfulness since her past surgery, decreased bloodflow in her left arm, and tingling.  (Tr. 306).  He also noted that Plaintiff suffered drowsiness, dizziness, and memory loss.  (Tr. 306).  And, he expected her impairments to last more than twelve months.  (Tr. 306).

Dr. Vosler opined that Plaintiff' symptoms would frequently interfere with her

attention and concentration during a typical workday.  (Tr. 307).  He believed that

Plaintiff could sit for 30 minutes at a time and stand for 15 minutes at a time, but she

could not sit or stand for more than 2 hours during an 8-hour workday.  (Tr. 307-08).  Dr.

Vosler believed Plaintiff could only walk for about 10 minutes at a time or about 1 city

block without rest.  (Tr. 307-08).  According to Dr. Vosler, Plaintiff could not lift any

amount of weight in a competitive work situation.  (Tr. 308).  And Dr. Vosler opined that

Plaintiff could only use her left hand, fingers and arms 5% of time in an 8-hour workday.

*Id*.  He recognized that Plaintiff suffered from anxiety and that her anxiety would

interfere with her work abilities.  (Tr. 307).  Dr. Vosler concluded that was incapable of

performing low stress jobs "due to memory loss, which caused ↑ [increased] anxiety/loss

of complete use of her left arm.  *Id.*

The Commissioner relies on the opinions of physician, Dr. Ray, who evaluated

Plaintiff at the request of the Ohio Bureau of Disability Determination.  (Tr. 311-20). Dr.

Ray examined Plaintiff on one occasion in August 2005 and concluded:

> Marjorie Stevenson is being evaluated today for memory problems,
> left upper extremity pain, and right foot pain.  The history, physical
> examination, and review of her medical records are most compatible with a
> left parietal meningioma which has resected [and] which has resulted in
> residual memory and processing deficits, left upper extremity arterial
> thrombosis resulting in mild weakness, decreased coordination, decreased
> sensation, and decreased strength as well as a right foot plantar fasciitis.

(Tr. 313). Dr. Ray further opined that Plaintiff could lift/carry 10 pounds frequently up to

20 pounds occasionally during 1/3 of an 8-hour workday.  (Tr. 318).  Dr. Ray believed

that Plaintiff could stand/walk 4 hours in an 8-hour work day and 1 hour at a time; she

5

could never climb or crawl; she could occasionally balance, stoop, crouch, or kneel; she would frequently be limited in reaching, handling, and fingering of the left upper extremity.  (Tr. 319).

In June 2003, psychologist Dr. Heideman evaluated Plaintiff for the Ohio BDD. (Tr. 179-87).  Dr. Heideman diagnosed Plaintiff with bereavement (due to the death of her pet dog), a caffeine induced sleep and anxiety disorder, an adjustment disorder with anxiety, and borderline intellectual functioning.  (Tr. 182, 185).  He assessed Plaintiff's GAF at 63 referring to "some mild symptoms ... or some difficulty in social, occupational, or school functioning ... but generally functioning pretty well."  Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at p. 34.[2]  (Tr. 185).  Dr. Heideman observed that Plaintiff "did not exaggerate or minimize her symptoms.  She did not mention any pain but she did rub her left arm on occasion."  (Tr. 182).  Dr. Heideman's summary and conclusions indicated that Plaintiff does not have significant limitations on her mental work abilities.  *See* Tr. 186.

## III.    ADMINISTRATIVE REVIEW

### A.    "Disability" Defined And The ALJ's Sequential Evaluation

The term "disability" as defined by the Social Security Act carries a

---

[2]  Health care professionals use GAF, or Global Assessment Functioning, to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation.  *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

specialized meaning of limited scope.  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.[3]  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 14-28; *see also* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?

2.     Does the claimant suffer from one or more severe impairments?

3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

---

[3] Impairments must also be either expected to cause death or last twelve months or longer. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

**B.**     **The ALJ's Decision**

At Step 2 of the sequential evaluation, the ALJ concluded that Plaintiff has five

severe impairments: (1) status post brain meningioma surgery; (2) status post dominant

left arm thrombosis; (3) mild cognitive disorder NOS (not otherwise specified); (4)

generalized anxiety disorder; and (5) since March 2005, right foot plantar fasciitis.  (Tr.

26).

The ALJ found at Step 3 that Plaintiff did not have an impairment or combination

of impairments that met or equaled the criteria of a listing-level impairment.  (Tr. 26).

At Step 4 the ALJ found that Plaintiff had the Residual Functional Capacity to

perform a limited range of light work.[4]  Specifically, the ALJ found:

> The claimant lacks the residual functional capacity to: (1) lift more
> than 10 pounds frequently or 20 pounds occasionally; (2) stand or walk for
> more than one hour at a time and for no more than four hours total in a work
> day; (3) climb ladders or scaffolds or crawl; (4) do greater than occasional
> stooping, crouching, or kneeling; (5) work at unprotected heights; (6) do
> greater than frequent reaching above the dominant left shoulder level; (7)
> use the dominant left hand for fingering or handling on greater than a
> frequent basis; (8) follow complex or detailed instructions; (9) do other than
> low stress jobs (i.e., no job involving above average pressure for
> production, work that is other than routine in nature, or work that is
> hazardous).

(Tr. 27).  Using this assessment, the ALJ found that Plaintiff could not perform her past

relevant work.  (Tr. 27).  And the ALJ's finding throughout his sequential evaluation led

him to conclude that Plaintiff was not under a disability and hence not eligible for DIB.

---

[4] Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds...."  20 C.F.R. §404.1567(b).

(Tr. 26-28).

## IV.    JUDICIAL REVIEW

Judicial review determines whether substantial evidence in the administrative record supports the ALJ's factual findings.  *Bowen v. Comm'r. of Soc. Sec*., 478 F3d 742, 745-46 (6th Cir. 2007).  "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)).  It consists of "more than a scintilla of evidence but less than a preponderance..."  *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential, not *de novo*. *See Cruse v. Commissioner of Social Sec*. 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994).  An ALJ's factual findings must be upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).  Once substantial supporting evidence is found in the administrative record, courts do not consider whether they agree or disagree with the ALJ's findings or whether the administrative record contains contrary evidence.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, substantial evidence is not the analytical ending point.  Judicial review further considers whether the ALJ "applied the correct legal criteria."  *Bowen*, 478 F.3d at

9

746.  If the ALJ does not, the decision may not be upheld even if the findings are supported by substantial evidence.  *See id.*  For example, a decision will not be upheld where the ALJ failed to apply mandatory procedural rules and legal criteria established by the Commissioner's Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right.  *See Bowen*, 478 F.3d at 746 (and cases cited therein).

## V.      DISCUSSION

### A.      Plaintiff's First Claimed Errors

#### 1.
#### The Parties' Contentions

Plaintiff contends that the ALJ erred by crediting the opinions of the state agency physician, Dr. Ray, over the opinions of her treating physician, Dr. Vosler.  She emphasizes that Dr. Ray's one-time examination occurred after Plaintiff's date last insured and without the benefit of Dr. Vosler's subsequent (August 2005) opinions.  She also emphasizes that the ALJ erred as a matter of law because Dr. Ray had many of the same findings reported by Drs. Vosler and Pavlina.  Plaintiff reasons that given those same findings, the ALJ was required as a matter of law to place more weight on Dr. Vosler's opinions than on Dr. Ray's opinions.  (Doc. #5 at 4)(citing Soc. Sec. Ruling 96-2p).  Plaintiff also argues that the Exhibits cited by the ALJ do not support his decision to assign less weight to Dr. Vosler's opinion, and consequently, the ALJ failed to provide "good reasons" for not fully crediting Dr. Vosler's opinions.

10

The Commissioner argues that the opinions of Dr. Vosler were not entitled to controlling or deferential weight, and that the ALJ properly weighed his opinions as required by the Regulations and Rules.  According to the Commissioner, substantial evidence supports the ALJ's decision, particularly his reliance on Dr. Ray's August 2005 opinions (Tr. 311-20) and his rejection of Dr. Vosler's extreme limitations, which were inconsistent with the other medical opinions of record.

## 2.
## <u>Medical Source Opinions</u>

The treating physician rule, when applicable, requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor or an examining physician who saw a claimant only once or a medical advisor who testified before the ALJ.  *Wilson*, 378 F.3d at 544; *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §404.1527(d)(2), (e), (f).  A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record.  *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §404.1527(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the

frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

In general, more weight is given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §404.1527(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, the opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §404.1572(d), (f).

### 3.
### Analysis

A review of the ALJ's decision reveals a well-supported description of the medical source opinions and records. (Tr. 20-23). Contrary to Plaintiff's contentions the ALJ provided sufficient information to show that he weighed these medical source opinions as the Regulations required. The ALJ correctly set out the legal criteria applicable under the treating physician rule and correctly recognized that if controlling weight is not due a

treating physician's opinion under that criteria, the Regulations require an ALJ to continue weighing the treating physician's opinions under a number of factors.  *See* Tr. 22.  The ALJ then correctly listed those factors consistent with the Regulations and case law.  *See* Tr. 22; *see also* 20 C.F.R. §404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544.

Next, the ALJ declined to credit Dr. Vosler's opinions based on factors permitted by the Regulations.  This appeared in the ALJ's finding that Dr. Vosler's opinion was not supported by adequate objective findings and that his opinion was inconsistent with the records of her specialist, vascular and cardiothoracic surgeon Dr. Greer, who performed the left-arm vascular surgery and followed Plaintiff post-operatively.  (Tr. 188-95).  Dr. Greer noted in July 2003 that Plaintiff continued to do well and her Doppler pulses were excellent although Plaintiff complained of some tiredness when she used her left hand for writing for long periods of time.  (Tr. 188).

In addition, the ALJ relied on the records of specialist Dr. Pavlina, a cardiothoracic and vascular surgeon who saw Plaintiff on March 17, 2004.  Dr. Pavlina reported that Plaintiff's right and left hand were pink and warm.  (Tr. 226).  Dr. Pavlina noted that although there were some problems palpating Plaintiff's left arteries, she had good strength and no muscle atrophy.  (Tr. 226).  Post-operative follow-up MRIs of Plaintiff's brain also showed no evidence of recurrent or residual tumor.  (Tr. 177, 229-30).  This constitutes substantial evidence in support of the ALJ's reasons for rejecting Dr. Vosler's opinions.

The ALJ also explained that Dr. Vosler did not provide a supporting rationale for

his opinions regarding Plaintiff's functional limitations. (Tr. 23). This constituted an additional correct basis under the Regulations for discounting Dr. Vosler's opinions. *See* 20 C.F.R. §404.1527(d)(3)-(4). And a review of Dr. Vosler's opinions reveals only a few briefs notes without significant supporting analysis. *See* Tr. 306-10.

For all these reasons, the ALJ applied the correct legal criteria to Dr. Vosler's opinions and substantial evidence supports the ALJ's reasons for discounting Dr. Vosler's opinions.

Although Plaintiff also challenges the ALJ's reliance on Dr. Ray's opinions, he does so mainly because Dr. Ray did not review the later reports provided by Dr. Vosler and Dr. Pavlina. Yet the ALJ applied one of the regulatory factors to Dr. Ray's opinions by finding his opinions well supported by objective clinical evidence. *See* Tr. 20. Comparing Dr. Ray's report to Dr. Vosler's report reveals that Dr. Ray provided much more significant and detailed information in support of his opinions and the limitations he identified. *Compare* Tr. 311-20 *with* Tr. 306-10. In addition, because the ALJ did not err when rejecting Dr. Vosler's opinions (for the above-stated reasons), it was not error for the ALJ to credit the opinions of Dr. Ray even though he did not review the later reports provided by Dr. Vosler.

Accordingly, Plaintiff's first claimed errors lacks merit.

**B.**     **Plaintiff's Credibility**

Plaintiff maintains that the ALJ erred by rejecting her testimony about the severity of her impairments, because objective medical evidence supported her testimony, because

14

Dr. Heideman noted that she did not exaggerate or minimize her symptoms, because the ALJ did not look closely at her daily activities, and because her estimates of her pain levels will vary on good and bad days, contrary to the ALJ's statement.  (Doc. #5 at 6-7).

"'There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record.'" *Cruse v. Commissioner of Social Sec*., 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Jones v. Comm'r. of Soc. Sec*., 336 F.3d 469, 475 (6th Cir. 2003) (other citation omitted).  Yet, "'an ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability.'"  *Cruse*, 502 F.3d at 542 (quoting *Jones*, 336 F.3d at 476)(other citation omitted).  "Notably, an ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse*, 502 F.3d at 542 (citations omitted).  An ALJ's credibility determinations must be supported by substantial evidence.  *Id*.

Contrary to Plaintiff's contentions, substantial evidence supports the ALJ's credibility determination.  The ALJ reasonably found that certain factors undermined Plaintiff's credibility.  *See* Tr. 23-24.  The ALJ correctly recognized that during Plaintiff's testimony at the second administrative hearing, she altered her estimates by, stating she could stand or walk 30 minutes at a time but could only sit fifteen minutes at a time due to pain in her right leg.  (Tr. 24; *see* Tr. 376).  During the first administrative hearing, Plaintiff testified that she could walk for ten to fifteen minutes at a time; stand for fifteen

15

to twenty minutes at a time; and had no problems sitting. (Tr. 339-40). Plaintiff also told Dr. Ray that she did not have any problems sitting. (Tr. 312). The ALJ also correctly noted that there the record does not contain evidence connecting her medication, Plavix and Cardizem that made her feel dizzy. (Tr. 24). Finally, the ALJ considered Plaintiff's daily activities, which included driving, cooking, performing housework, watering flowers, brushing and caring for her dog, reading, visiting friends, shopping, attending church, pulling weeds, exercising, collecting items on the internet, attending car shows, going to the movies and dining out, which undermine her subjective complaints of disability. (Tr. 23-24, 88, 107-110, 115-19, 183, 312, 330, 332, 337-38, 345-46). In addition, contrary to Plaintiff's contentions, the ALJ considered not only the limited amount or frequency of time in which she engaged in these activities, *see* Tr. 15, but also Dr. Heideman's observation that Plaintiff did not exaggerate or minimize any symptoms, *see* Tr. 17.

Plaintiff further argues that the ALJ erred by not finding her limited to sedentary work at age fifty and, in turn, by not finding her to be disabled pursuant to Grid Rule 201.14, Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2. This argument lacks merit because the ALJ's assessment of Plaintiffs residual functional capacity – at the limited range of light work – was supported by substantial evidence, particularly the opinions of Dr. Ray. As a result, the ALJ was not required to apply Grid Rule 201.14 since it applies only to those age fifty who can only perform sedentary work. *See Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) (claimant's characteristics

16

must exactly match the criteria in Grid Rules to trigger a disability finding).

Accordingly, Plaintiff's challenges to the ALJ's credibility determinations lack merit.

### C. The ALJ's Hypothetical Questions

Plaintiff next argues that the ALJ "erred vocationally in his hypotheticals to the vocational expert at step 5 of the evaluation...." (Doc. #5 at 8). Plaintiff reasons, "His hypotheticals at Tr. 363-364 asked the vocational expert to assume no constant use of the left hand and arm. Neither Dr. Vosler or Dr. Ray found this, as Dr. Vosler after the hearing reported only 5% use of the left hand and arm at work (Tr. 318-20)." *Id.* Plaintiff also maintains that the ALJ's hypotheticals failed to include other functional limitations regarding her left hand and arm . *Id.*

A proper hypothetical question accurately describes the claimant "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *see Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

A review of the ALJ's hypothetical questions reveals that he asked the vocational expert to consider the jobs available to a person with her age, education, work history, and residual functional capacity. *See* Tr. 363-64. Because the ALJ did not err in

17

discounting Dr. Vosler's opinion or in assessing Plaintiff's Residual Functional Capacity, the ALJ did not err by omitting the additional limitations Plaintiff presently identifies. *See Stanley*, 39 F.3d at 118.

Plaintiff also argues that the vocational expert's testimony was not sufficient to satisfy the Commissioner's burden at Step 5 of the sequential evaluation to show that other work remained available to Plaintiff.  Plaintiff contends, "While he [the vocational expert] listed 2000 total light jobs, it is not clear that he was referring to all 2000 jobs when he mentioned the 'few light inspection and packaging jobs' there."  (Doc. #5 at 8). This contention lacks merit.  A review of the vocational expert's testimony reveals that he plainly stated 2000 total light jobs would be available to a hypothetical person with Plaintiff's Residual Functional Capacity for a limited range of light work.  *See* Tr. 364. Although the expert also referred only to a "few light inspection and packaging jobs," *id.*, this did not eliminate or nullify his testimony about the existence of 2000 light jobs that exist for someone with Plaintiff's Residual Functional Capacity for a limited range of light work.

Accordingly, Plaintiff's challenges to the ALJ's hypothetical questions lack merit.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability determination be affirmed; and

2. The case be terminated on the docket of this Court.

August 6, 2008                                    s/ Sharon L. Ovington
                                    Sharon L. Ovington
                                    United States Magistrate Judge

18

19

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).